IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MUSTAFA-EL K.A. AJALA,

    Plaintiff,

v.                                       Case No. 22C0286

ELIZABETH TEGELS, ET AL.,

    Defendants.

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON EXHAUSTION GROUNDS**

Plaintiff Dennis Jones (aka Mustafa-El K.A. Ajala) alleges that Jackson Correctional Institution employees retaliated against him by placing him in the restrictive housing unit, issuing him a conduct report, and ordering additional time in restrictive housing because Ajala reported the use of excessive force against another inmate.[1] Ajala failed to allege retaliation throughout the disciplinary proceedings related to the conduct report, and therefore, failed to exhaust his retaliation claims. Those claims must be dismissed based on his failure to exhaust his administrative remedies.

**Background**

Ajala's retaliation claim revolves around a conduct report Ajala received after writing a letter to Warden Tegels reporting a January 20, 2022 use of force on another

---

[1] Ajala also brought other claims unrelated to this motion that will not be addressed here.

inmate. According to the conduct report, Ajala alleged in the letter that staff had "brutally and grativously [*sic*] slamm[ed] [the inmate's] face down to the concrete floor." (Davidson Decl. Ex. 100, at p.23.) Ajala wanted the "potentially fatal act" to be "addressed and made clear that it will not be tolerated and is not to be repeated." *Id.* The conduct report notes that Ajala signed the letter, "Mustafa-El K.A. Ajah # 223971 A.K.A. Dennis Jones." *Id.*

Ajala was interviewed about the letter and asked if he personally witnessed the use of force. Jones said he did not personally witness it, but listened to other inmates near him speaking about what was transpiring. He said he saw the inmate on the ground, but did not personally witness the incident. *Id.*

Captain Johnson watched the video of the use of force and found that "at no time did staff slam his face on the floor." *Id.* According to incident reports, the inmate went limp in trying to resist at one point, and that could have been why it looked like staff took him down hard. Johnson also found that given Ajala's cell location, it would have been almost impossible for him to see anything, especially with any kind of reliability and especially with all the staff around. *Id.*

Due to Ajala having lied in the letter, and because he signed the letter using his non-legal name first, Ajala received a conduct report. The conduct report alleged Ajala violated Wis. Admin. Code §§ DOC 303.32 and 303.35, "Lying about an

2

employee" and "False Names and Titles," respectively.[2] (Davidson Decl. Ex. 100, at p.24.)

On February 25, 2022, Ajala was provided a disciplinary hearing. He gave a lengthy oral statement which was is essentially transcribed in the record. In his statement, Ajala contested the false name allegation by arguing that he was permitted to use his Muslim name in conjunction with his legal name. (Davidson Decl. Ex. 100, at p.26.)

He then contested the Lying about an Employee charge by arguing three points. First, he argued his letter was required by the Inmate Complaint Review System (ICRS) because it was his attempt to informally resolve the issue prior to filing a complaint:

> The doc 310 is the admirative code which outlines and governs the ICR system. A part of the ICRS is stated on the complaint form itself. The mandate that us prisoners, 'prior to filing a formal complaint, you must attempt to resolve the issue". An attempt at resolution is a required part of the ICRS. It is only a violation of 303.32 if an alleged false statement is "made" outside the complaint review system under chapter DOC 310. It has to be outside of the ICRS, not really outside the complaint form. (submitted 2 pieces of papers as evidence, DOC 310 Instructions and ICE return letter). My letter to the warden was my attempt at resolution (submitted 3 pieces of paper as evidence, an ICE letter that was filed). These submitted exhibits are proof that I was trying to get resolution and return letters per a complaint system. This should in fact prove that this violation shouldn't apply.

*Id.*

Second, Ajala argued the conduct report did not accurately describe what he had written. According to the conduct report, Ajala wrote that staff "brutally and

---

[2] Ajala also wrote a second letter pleading to not be given a conduct report for the first letter. He was accused of "Soliciting an Employee" for the second letter, but later found not guilty. That second letter and charge are not relevant to this motion, and will not be discussed further.

3

grativously slammed him face down to the concrete floor." Whereas Ajala says he actually wrote "he was slammed face down but not that his face to the floor." (Davidson Decl. Ex. 100, at p.23, 26.)

Third, Ajala argued he was not in his room when it happened, he was in the bathroom. Therefore, according to Ajala, he *could* see "some of the incident but not all." Ajala claimed he "saw him once he was taken down in handcuffs." Ajala asserted, "I was just describing it as I saw it in, in my opinion, my perception." *Id.*

After he gave his statement, Ajala was asked, "You stated that you saw him on the ground cuffed, did you see him before that[?]" Ajala admitted, "No, I didn't see the take down." *Id.*

The hearing officer considered the evidence and testimony and found Ajala guilty of Lying about an Employee and False name and Titles. (p.24 and 29.) He described his reasons in a lengthy decision that was given to Ajala on February 28, 2022. (p.30-31.) Ajala received a disposition of 120 days disciplinary separation. (Davidson Decl. Ex. 100, at p.24 and 27.)

Ajala filled out an appeal form to contest the hearing, attaching seven additional pages of argument. (Davidson Decl. Ex. 100, at p.15-22.) In the appeal, Ajala mainly re-argued the points he had made at the hearing, with a couple of additions. For instance, he claimed that he had never written in the letter that he "personally witnessed" the take-down he had described. (Davidson Decl. Ex. 100, at p.17.) Ajala also added an argument that the hearing officer had created a rule on the

spot that the legal name has to be used before the religious name, and this "indicates biasness." (Davidson Decl. Ex. 100, at p.18.)

On March 15, 2022, the Deputy Warden affirmed the hearing officer's decision, writing only, "Appeal received outside of time limits. Per 303.82."[3] (Davidson Decl. Ex. 100, at p.15.)

**Standard of Review**

Under Federal Rules of Civil Procedures 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Moreover, more than mere conclusory allegations are required to defeat a motion for summary judgment. *Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 840 (7th Cir. 1996). In order for a party "to avoid summary judgment that party must supply evidence sufficient to allow a

---

[3] The parties dispute whether the appeal was timely submitted to the warden. Ajala claims he handed an appeal of the decision to a third shift officer on March 2, 2022. (Davidson Decl. Ex. 100, at p.10.) On March 16, 2022, Ajala received a document stating his appeal was received March 15, 2022, and was therefore untimely. *Id.*, *See* Wis. Admin. Code § DOC 303.82(1) (inmates may appeal disciplinary decisions within 10 days after receiving a copy of the decision). Regardless of whether it was timely submitted, Ajala's appeal did not contain the content necessary to exhaust his retaliation claims, so this dispute is not material.

5

jury to render a verdict in his favor." *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995).

**Argument**

**I.    The retaliation claims must be dismissed because Ajala failed to exhaust his administrative remedies as to these claims.**

Ajala did not raise retaliation as a defense to his conduct report or in his appeal. Therefore, he failed to exhaust his administrative remedies as to his retaliation claims.

**A.    Inmates must exhaust their administrative remedies before bringing a lawsuit.**

The Prison Litigation Reform Act of 1995 ("PLRA") requires inmates to exhaust their available administrative remedies before bringing a 42 U.S.C. § 1983 action with respect to prison conditions. The relevant section of the PLRA, 42 U.S.C. 1997e(a), reads as follows:

> **Applicability of administrative remedies.**   No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  Congress defines "prison conditions" broadly.

> [T]he term 'civil action with respect to prison conditions' means any civil proceeding arising under Federal law with respect to the conditions of the confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

18 U.S.C. § 3626(g)(2).

The PLRA exhaustion rule is "comprehensive" and "very broad." *Smith v. Zachary*, 255 F.3d 446, 451-52 (7th Cir. 2001). There is no futility exception to the

exhaustion requirement. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 537 (7th Cir. 1999). "No one can know whether administrative requests will be futile; the only way to find out is to try." *Id*. at 536. Nor is there a substantial compliance exception; a good faith attempt to exhaust is not enough. *Zachary*, 255 F.3d at 452. Furthermore, exhaustion is required no matter what relief the plaintiff seeks. *Booth v. Churner*, 532 U.S. 731, 734, (2001).

There are several important policy considerations behind the PLRA exhaustion rule. Administrative exhaustion restricts frivolous claims, gives prison officials the opportunity to address a situation internally, develops the factual record, and reduces the scope of litigation. *Zachary*, 255 F.3d at 450-51. "The statute embodies a firm congressional will that keeps with a bedrock principle of our jurisprudence: 'Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *McCoy v. Gilbert*, 270 F.3d 503, 509-10 (7th Cir. 2001) (quoting *Thomas v. Ramos*, 130 F.3d 754, 759 (7th Cir. 1997) (citations omitted)).

In order to protect the goals of the PLRA exhaustion requirement, a plaintiff must exhaust all available administrative remedies before commencing an action. "The exhaustion requirement applies whenever there is some administrative process remaining at the prisoner's disposal." *McCoy*, 270 F.3d at 510. Thus, "a case filed before exhaustion has been accomplished must be dismissed." *Perez*, 182 F.3d at 537.

**B. Wisconsin prisoners exhaust retaliation claims related to conduct reports by raising retaliation as a defense to the conduct report.**

In Wisconsin, to exhaust issues related to a conduct report, an inmate must first raise the issue at the disciplinary hearing and then again on appeal to the warden's office. *See* Wis. Admin. Code § DOC 303.82(1); *Tonn v. Meisner*, No. 14-CV-481-JDP, 2015 WL 8207513, at *3 (W.D. Wis. Dec. 7, 2015), *aff'd*, 669 F. App'x 800, (7th Cir. 2016); *Walker v. Keller*, No. 13-CV-342-JDP, 2014 WL 3845701, at *4 (W.D. Wis. Aug. 5, 2014); *Boyd v. Heil*, No. 17-CV-209-WMC, 2020 WL 137300 (W.D. Wis. Jan. 13, 2020).

The warden's decision is final with respect to sufficiency of the evidence. Wis. Admin. Code § DOC 303.82(4). Any alleged procedural deficiencies can then be pursued through the Inmate Complaint Review System (ICRS) outlined in Wis. Admin. Code Ch. DOC 310. *See* Wis. Admin. Code §§ DOC 310.06.

The failure to properly complete each step constitutes failure to exhaust available administrative remedies. *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002).

**C. Ajala did not exhaust his administrative remedies with respect to his retaliation claims.**

Ajala failed to exhaust his retaliation claims because he did not raise retaliation as a defense at his hearing or in his appeals. In order to exhaust administrative remedies, prisoners must give the prison notice of a problem, and an opportunity to address it. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Ajala was granted leave to proceed on retaliation claims based on his allegation that

8

he was punished for writing a letter to the warden. At the hearing and in his appeal to the warden, Ajala offered several arguments to show he was not guilty. However, he never argued that the conduct report was issued out of retaliation. Therefore, he never put the prison on notice of the retaliation claims he raised in this lawsuit.

This case is much like *Boyd v. Heil*, 2020 WL 137300. There, an inmate received a conduct report for various pieces of mail he had written in violation of a no-contact order. He was proceeding on First Amendment mail and First Amendment retaliation claims. Boyd appeared at the hearing and made arguments to defend himself against the charges, including that Defendant Reindl was incorrect about the communication Boyd was attempting to send. However, Boyd failed to exhaust his retaliation claims because he never made "any allegations that Reindl was actually motivated by an intent to punish him for engaging in constitutionally protected activity." *Id.*, *4. Although prison officials could have investigated whether Reindl's assessment of Boyd's communication truly violated the terms of the no-contact order, they would "not have had a reasonable opportunity to investigate" whether Reindl had a retaliatory intent behind issuing the conduct report. *Id.*

The same is true here. Ajala's arguments went to the accuracy of the charges, and whether they violated the code. He did not challenge the intent behind issuing the conduct report and subsequent discipline.

The closest Ajala came to putting the prison on notice of a retaliation claim was in his appeal, where he referenced the hearing officer's "biasness" due to him allegedly making up a rule requiring the legal name be used before the religious

9

name. But even this was insufficient to exhaust a retaliation claim. To "adequately exhaust his retaliation claim," Ajala would have had to identify "*both* the protected conduct that caused the retaliation *and* the retaliatory act." *Boyd*, 2020 WL 137300, at *3 (W.D. Wis. Jan. 13, 2020) (emphasis in original) (citing *Lockett v. Goff*, No. 17-cv-93-jdp, 2017 WL 4083594, at *2 (W.D. Wis. Sept. 13, 2017); and *Wine v. Pollard*, No. 08-cv-173-bbc, 2008 WL 4379236, at *3 (W.D. Wis. Sept. 23, 2008)). Ajala did not identify that Isensee was being biased *because* of Ajala having written a letter to the warden; he just accused him of biasness due to Ajala disagreeing with Isensee's reasoning on the false name charge. This passing remark in an appeal is not sufficient to exhaust a retaliation claim. *See Malone v. Clark*, No. 04-C-229-C, 2004 WL 2504211, at *5 (W.D. Wis. Oct. 26, 2004).

Because Ajala did not defend himself against the conduct report by raising the issues he now seeks to litigate, Jones failed to exhaust his administrative remedies as to his retaliation claims.

## Conclusion

The Court should dismiss Ajala's retaliation claims without prejudice due to his failure to exhaust his administrative remedies as to those claims.

Dated December 8, 2022.

                                                Respectfully submitted,

                                                JOSHUA L. KAUL
                                                Attorney General of Wisconsin

                                                Electronically signed by:

JENNIFER R. REMINGTON
Assistant Attorney General
State Bar #1098838

s/ Rebecca A. Paulson
REBECCA A. PAULSON
Assistant Attorney General
State Bar #1079833

Attorneys for Defendants.

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-2230 (Remington)
(608) 266-0278 (Paulson
(608) 294-2907 (Fax)
remingtonjr@doj.state.wi.us
paulsonra@doj.state.wi.us